UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES CLIFFORD SLICK BASHAM, | 4:13-CV-04112-KES |
| Petitioner, | |
| vs. | MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

Petitioner, James Clifford Slick Basham, an inmate in the Federal Correctional Institution in Florence, Colorado, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Civ. 13-4112 (Civ. Docket) 1. The government opposes the motion. Also pending is Basham's related motion for discovery. Civ. Docket 3. For the following reasons, the court denies Basham's petition.

**BACKGROUND**

On January 1, 2012, Basham was arrested following a controlled sale of methamphetamine. Basham paid $1,800 to a confidential informant, who was working with law enforcement to purchase approximately one ounce of methamphetamine. Cr. 12-40022 (Cr. Docket) 26. After receiving the money, the confidential informant conducted a controlled delivery of the methamphetamine to Basham. *Id.* Basham was arrested after he emerged from the confidential informant's vehicle. PSR at 4. Officers searched Basham and

found the methamphetamine and a digital scale inside his coat pocket. *Id.* Two cellular phones were also confiscated from Basham during the arrest. *Id.* A search of Basham's residence was then conducted after the consent of Basham's parole officer was obtained. *Id.* During the search, agents discovered several plastic baggies, a plastic bag containing trace amounts of marijuana, a digital scale that field tested positive for methamphetamine, a spoon that field tested positive for methamphetamine, a snort tube that field tested positive for methamphetamine, and four glass pipes. *Id.*

Basham was subsequently charged with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Cr. Docket 1. Basham and the government entered into a plea agreement. *See* Cr. Docket 25. The plea agreement contained a "Waiver of Defenses and Appellate Rights" provision, which stated:

> The Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues. The parties agree that excluded from this waiver is the Defendant's right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a).

*Id.* at 8.

Additionally, Basham and the government stipulated to his base offense level, agreeing Basham's conduct involved "at least 5 grams (actual) but less than 20 grams (actual) of methamphetamine." *Id.* at 5. Basham also signed a factual basis statement in which he acknowledged that:

2

> On January 1, 2012, the Defendant, James Clifford Slick Basham, knowingly and intentionally possessed a controlled substance, methamphetamine, with the intent to distribute the methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The Defendant provided approximately $1,800 to a confidential informant working with law enforcement to purchase one ounce of methamphetamine. The confidential informant, working with law enforcement, conducted a controlled delivery of methamphetamine to the Defendant. The Defendant intended to distribute approximately 10.5 grams of the substance delivered by the confidential informant, which contained more than 5 grams actual methamphetamine. The remainder of the substance delivered to the Defendant was intended for his own personal use.

Cr. Docket 26 at 1.

On July 23, 2012, Basham's change of plea hearing was held. *See* Cr. Docket 29. Basham appeared with counsel. After being placed under oath, Basham was asked if he had had the opportunity to discuss his case with his attorney and whether he was fully satisfied with the representation that he received, to which he responded affirmatively.[1] Basham was asked if he had read, discussed, and understood the terms of the plea agreement and the plea agreement supplement, and again he responded affirmatively.

The court then explained the maximum and mandatory minimum penalties that Basham faced by pleading guilty to the offense charged. The court asked if Basham understood these possible penalties, to which he stated that he did.

The court then reiterated that Basham had the right to plead "not guilty" and that, if he insisted on going to trial, he would be entitled to the

---

[1] No formal transcript of Basham's change of plea hearing or his sentencing hearing is available. The court has, however, independently reviewed the audio recordings of those hearings.

presumption of innocence, the right to counsel, to confront the witnesses against him, the right to remain silent, and the court's subpoena power with respect to having favorable witnesses appear. Basham was told that the burden of proof would remain on the government and that, if he decided not to testify or put on evidence, the court would tell the jury that it could not hold those facts against him. Basham was told that if he pleaded guilty he would be giving up those rights, and Basham responded that he understood.

Next, the court explained the elements of his offense and that the government would have to prove each element beyond a reasonable doubt if he insisted on going to trial. Basham indicated that he understood this was the crime he was charged with and what the government would have to prove. The court then inquired about the factual basis Basham submitted, asked whether he had read it before he signed it, and whether everything in it was the truth. Basham again responded affirmatively. After reviewing the factual basis statement, the court determined there was an independent basis in fact to support the plea of guilty.

Finally, the court asked Basham how he wished to plead, and he responded "guilty." The court found Basham fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that the plea was entered knowingly and voluntarily. Additionally, the court found that the plea was supported by an independent basis in fact which contained each essential element of the offense charged. The plea was therefore accepted, and Basham was adjudged guilty.

4

On October 15, 2012, Basham appeared with counsel before this court for sentencing. *See* Cr. Docket 32. The court ruled on several objections Basham raised to the presentence report (PSR). Based on the contemporary Guidelines Manual, Basham's base offense level for an offense involving at least 5 grams but less than 20 grams of actual methamphetamine was 26. PSR at 5. After Basham was credited with three points for accepting his responsibility, PSR at 6. Basham's total offense level was determined to be 23. Basham's criminal history placed him in category VI. Based on Basham's total offense level and criminal history category, the court found his advisory guideline range to be 92-115 months imprisonment. The court sentenced Basham at the bottom of his guideline range to 92 months,[2] and ordered Basham's sentence to run concurrently with his undischarged state sentence.[3]

Basham did not appeal. On October 11, 2013, Basham filed the present motion to vacate, set aside, or correct his sentence pursuant to § 2255. Civ. Docket 1. Bashan claimed, *inter alia*, that he did not receive the assistance of counsel as guaranteed by the Sixth Amendment. *See id.* Following the magistrate judge's order that the government file and serve a response, Civ. Docket 5, the government moved to dismiss the petition. Civ. Docket 8.

---

[2] On January 30, 2015, the court granted Basham's motion for a sentence reduction based on recent amendments to the sentencing guidelines. Cr. Docket 40. Under the new guidelines, Basham's total offense level was lowered from 23 to 21. This new level placed his amended guideline sentence at 77–96 months. Basham's previously imposed sentence of 92 months was reduced to 77 months. *Id.* at 1.

[3] The court also imposed the mandatory minimum term of supervised release, with conditions, and waived the imposition of a fine.

Basham subsequently requested this court to appoint him counsel to pursue his § 2255 petition, which motion was granted. Civ. Docket 14, 15.

## LEGAL STANDARD

A § 2255 motion is the "statutory analog of habeas corpus for persons in federal custody." *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987). A federal prisoner may seek relief from his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. Relief may be granted under § 2255 only for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Claims of ineffective assistance of counsel are generally not reviewed on direct appeal and are properly addressed in a § 2255 petition such as the one here. *See United States v. Lee*, 374 F.3d 637, 654 (8th Cir. 2004).

The Sixth Amendment affords criminal defendants the right to counsel. *See e.g.*, *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012). Moreover, the right to counsel means that criminal defendants are afforded the effective assistance of counsel. *Id.* The right to the effective assistance of counsel also extends to the plea agreement process. *Id.*; *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384

6

(2012); *Padilla v. Kentucky*, 559 U.S. 356, 373-74 (2010); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Generally, in order to establish ineffective assistance of counsel, a petitioner must satisfy the two-pronged standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id.* This "performance prong" requires a petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A petitioner challenging the effectiveness of counsel during the plea agreement process similarly must demonstrate that counsel's representation "was not 'within the range of competence demanded by attorneys in criminal cases.' " *Buchheit v. Norris*, 459 F.3d 849, 852 (8th Cir. 2006) (quoting *Tollett v. Henderson*, 411 U.S. 258, 93 (1973)); *Hill*, 474 U.S. at 58-59. Under this prong, the court must assess "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. There is a "strong presumption," however, "that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This "prejudice prong" requires the petitioner to "show that there is a reasonable probability that, but

7

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea agreement context, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In other words, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. With respect to the plea agreements, the court's inquiry is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59; *see also Lafler*, 132 S. Ct. at 1384.

Finally, a petitioner has the burden of satisfying both *Strickland* prongs. *Strickland*, 466 U.S. at 687; *see also Burns v. Gammon*, 260 F.3d 892, 897 (8th Cir. 2001). While both prongs must be satisfied, this court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* Similarly, if the court concludes that counsel's

performance was not deficient, it need not address whether the petitioner was prejudiced. *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003).

## DISCUSSION

When Basham originally filed his *pro se* § 2255 petition, he alleged several grounds for relief. Civ. Docket 1 at 4-5. The government responded to each of Basham's claims and asserted his petition should be dismissed. Civ. Docket 10. Following the appointment of counsel to represent him in this matter, however, Basham has narrowed the focus of his argument. Civ. Docket 17 at 4. Specifically, Basham contends that his original counsel rendered ineffective assistance. *See id.*

## I.    Procedural Default and Waiver

Responding to Basham's original petition, the government asserted that Basham procedurally defaulted on each of his claims for relief. Civ. Docket 10 at 3-4. Basham did not appeal any part of his case, and his signed plea agreement contained a "Waiver of Defenses and Appellate Rights" provision. *Id.* at 4. Although the government addressed the merits of each of Basham's assertions, it initially argues that Basham is precluded from raising his ineffective assistance of counsel claim in the present proceeding. *Id.* ("Therefore, his claims should *all* be dismissed.") (emphasis added).

In general, ineffective assistance claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Bringing an ineffective assistance claim on collateral review is often preferable

for the court and parties involved, even in the unusual case where such a claim could conceivably be raised on direct review. *See id.* at 504-05; *see also United States v. Cook*, 356 F.3d 913, 919-20 (8th Cir. 2004). Thus, while Basham did not raise his ineffective assistance claim on direct review, that fact does not preclude Basham from doing so here. Additionally, although Basham alleges that his Sixth Amendment right to counsel was denied because counsel failed to seek the exclusion of evidence obtained in violation of the Fourth Amendment, counsel's failure to raise the Fourth Amendment argument itself does not preclude this court's review of Basham's ineffective assistance claim. *Kimmelman v. Morrison*, 477 U.S. 365, 378-79 (1986). Therefore, to the extent that the government asserts that Basham is procedurally defaulted on his ineffective assistance claim, the court disagrees.

A defendant may, however, explicitly waive his or her ability to raise an ineffective assistance claim in a subsequent § 2255 proceeding as part of a plea agreement under certain circumstances. *See Chesney v. United States*, 367 F.3d 1055, 1059 (8th Cir. 2004) (opining that "an explicit waiver of the Sixth Amendment right to counsel—which explained the concept of ineffective assistance of counsel and the basic ramifications of waiving a claim that ineffectiveness influenced the signing of the waiver—would be considered knowing and voluntary."). A more generalized waiver, however, may be insufficient. *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000). As Basham points out, his waiver provision did not explicitly waive his right to seek post-conviction relief or his Sixth Amendment right to counsel. Civ.

10

Docket 17 at 5. Although Basham agreed to waive "all defenses and his right to appeal any non-jurisdictional issues," that language is even more generalized than the language the Eighth Circuit found in *DeRoo* to be insufficient to bar a subsequent ineffective assistance claim. *See* 223 F.3d at 922 (noting the plea agreement purported to waive "all rights to contest the conviction or sentence in any post-conviction proceeding pursuant to section 2255.") Thus, to the extent the government contends that Basham waived his right to raise his ineffective assistance claim, the court disagrees. Consequently, Basham has neither procedurally defaulted nor waived his ineffective assistance claim.

## II.     Ineffective Assistance of Counsel

Basham does not contest the legality of his arrest. Rather, according to Basham's petition, an officer seized his cellular phone after he was arrested, and the officer searched through its contents. Civ. Docket 1 at 4. The PSR notes that two cellular phones were "confiscated" from Basham upon his arrest, along with the methamphetamine and digital scale. PSR at 4. The PSR does not mention a search of either cellular phone taking place, and neither it nor Basham's petition states what information the officers gleaned from Basham's phone. Nonetheless, Basham asserts that he discussed this incident with trial counsel and whether a suppression motion should be filed. Civ. Docket 1 at 4. Basham contends that trial counsel did not believe any case law supported his suppression claim and, consequently, the motion was not filed. *See id.*

11

Basham asserts that there was supporting case law for his claim and that trial counsel should have filed the motion to suppress the search of his cellular phone and its data. Civ. Docket 17 at 8. Accordingly, Basham argues that counsel's failure to do so amounted to constitutionally deficient performance. *Id.* Basham further contends that, had the suppression motion been filed (and, presumably, been granted), there is a reasonable probability that he would have insisted on going to trial rather than entering a plea of guilty. *Id.* at 13-14.

### A.   Was Counsel's Performance Deficient?

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and . . . demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375; *see also Eastin v. Hobbs*, 688 F.3d 911, 915 (8th Cir. 2012). On one hand, an attorney's failure to conduct due diligence with respect to a meritorious motion may constitute deficient performance. *DeRoo*, 223 F.3d at 926; *United States v. Johnson*, 707 F.2d 317, 323 (8th Cir. 1983). On the other hand, the Eighth Circuit has stated that "failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." *New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690). Nonetheless, if Supreme Court or Eighth Circuit precedent "clearly portend the law" on an otherwise unsettled legal issue,

12

counsel's decision not to raise it may ultimately be unreasonable. *Fields v. United States*, 201 F.3d 1025, 1028 (8th Cir. 2000).

Thus, the first issue to be resolved is whether counsel failed to file a meritorious suppression motion with respect to the warrantless search of Basham's cellular phone. Civ. Docket 17 at 8. The parties acknowledge the Supreme Court's recent decision in *Riley v. California*, 134 S. Ct. 2473, 2485 (2014), which held that police must generally secure a warrant before searching a cellular phone. The Court's decision, however, was handed down on June 25, 2014, and the Court did not grant certiorari until January 14, 2014. *See Riley v. California,* 134 S. Ct. 999 (2014).[4] By comparison, Basham signed his plea agreement on July 18, 2012, and pleaded guilty on July 23. Consequently, the court must determine what legal authority was available to counsel at that time. *Cf. Kellogg v. Scurr*, 741 F.2d 1099, 1105 (8th Cir. 1984) (declining to apply the Supreme Court's decision of *Mincey v. Arizona*, 437 U.S. 385 (1978) because it "was decided more than two years after Kellogg's trial, the point from which we must determine if the suppression motion would have had any chance of success."); *see also Strickland*, 466 U.S. at 690 (noting a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").

---

[4] The Court's *Riley* decision involved consideration of two cases. *Riley*, 134 S. Ct. at 2480 (explaining "These two cases raise a common question"). The Court granted certiorari to both cases on the same day. *See* 134 S. Ct. 999 (2014).

In *Weeks v. United States*, 232 U.S. 383 (1914), the Supreme Court gave an early overview of the search incident to arrest doctrine. Although stated in dicta, the Court referenced "the right on the part of the government always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases." *Id.* at 392 (citations omitted). Then in *Chimel v. California*, 395 U.S. 752 (1969), the Court provided some clarification for the nuances of the doctrine. In doing so, the Court elaborated on the "proper extent" of the doctrine, explaining that:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.* at 762-63. Thus, the justification for the search incident to arrest doctrine was grounded in officer safety and the need to preserve otherwise destructible evidence. *See id.* (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)).

Later, in *United States v. Robinson*, 414 U.S. 218, 221-23 (1973),[5] the Court confronted a situation where, following an arrest, an officer conducted a

---

[5] The *Robinson* decision and its companion case, *Gustafson v. Florida*,

patdown and seized a crumpled up cigarette package from the defendant's coat pocket. Unsure of its contents, the officer opened the package and found fourteen capsules of what later turned out to be heroin. *Id.* at 223. Those capsules were introduced at trial and used to secure the defendant's conviction. *Id.* at 224. In an en banc decision, the D.C. Circuit Court of Appeals held the evidence had been obtained in violation of the Fourth Amendment. *Id.* at 220.

Reversing, the Court drew a line between its cases addressing an officer's authority to search the person of an arrestee following a lawful arrest on one hand and an officer's authority to search the areas "within the control of the arrestee" following an arrest on the other. *Id.* at 224. The facts of the *Robinson* case fell within the former and thus involved "the traditional and unqualified authority of the arresting officer to search the arrestee's person." *Id.* at 229, 232-33. The Court reaffirmed, however, that the rationale for that authority was grounded in the need to preserve officer safety and to prevent the destruction of evidence. *Id.* at 234. Nonetheless, the Court expressed disfavor with making an after-the-fact determination of whether one of those justifications was actually present, stating:

> The authority to search the person incident to a lawful custodial
> arrest, while based upon the need to disarm and to discover
> evidence, does not depend on what a court may later decide was
> the probability in a particular arrest situation that weapons or
> evidence would in fact be found upon the person of the suspect. A
> custodial arrest of a suspect based on probable cause is a
> reasonable intrusion under the Fourth Amendment; that intrusion

414 U.S. 260 (1973) were decided on the same day.

being lawful, a search incident to the arrest requires no additional justification.

*Id.* at 235. Although the Court's opinion repeatedly referenced the authority of officers to search "the person" of a lawfully detained arrestee, the Court concluded that the officer was likewise entitled to inspect the cigarette package that was found. *Id.* at 236 (citations omitted).

Then in *United States v. Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991), the Court specified that "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest' or no exigency exists." (internal citation omitted). The Court left intact its observation from *Robinson* that searches of an arrestee's person may be conducted following a lawful arrest. *Id.* at 16 n. 10. But, once a person's luggage or other so-called "property not immediately associated with the person of the arrestee" has been secured by the arresting officer and the arrestee poses no danger of accessing a weapon from it or destroying evidence inside it, "a search of that property is no longer an incident of the arrest." *Id.* at 15.

More recently in *Arizona v. Gant*, 556 U.S. 332, 335 (2009), the Court addressed the latter category of searches identified in *Robinson*, namely those searches incident to an arrest that involve areas purportedly within the control of the arrestee. Specifically, the *Gant* decision involved the search of an arrestee's vehicle after he had been arrested and placed in the back of a patrol

16

car following his arrest for a suspended license. *Id.* at 335-36. A gun was located in Gant's vehicle, along with a bag of cocaine discovered in the pocket of his jacket. *Id.* at 336. The Arizona Supreme Court concluded that neither rationale for the search incident to arrest doctrine identified in *Chimel*–officer safety and the preservation of evidence–were present, and thus the search was unreasonable. *Id.* at 337-38. The Court ultimately affirmed, holding that the "twin rationales of *Chimel*" permit "police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343. The Court added, however, that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)).

The parties have not revealed, and this court has not found, any decision from the Eighth Circuit Court of Appeals that was available at the time of Basham's plea that directly addressed whether a cellular phone could be searched incident to a lawful arrest.[6] Reviewing case law from other courts

---

[6] In *United States v. Mendoza*, 421 F.3d 663, 668 (8th Cir. 2005), the Eighth Circuit concluded that "[the defendant's] warrantless arrest was proper, and the search of his person and seizure of his cell phone were valid as a search incident to a lawful arrest." The court's analysis addressed the preliminary matter of whether probable cause existed to effectuate the arrest itself, rather than analyzing whether the search incident to arrest doctrine would allow the officer to seize and search the contents of defendant's cellular phone. *See id.* at 667-68. Thus, the quoted language from *Mendoza* does not

reveals a profusion of opinions either following or distinguishing the aforementioned Supreme Court decisions in a number of ways. Prior to the Supreme Court's decision in *Gant*, for example, several circuit courts relied on *Robinson* and concluded that a cellular phone found on the person of an arrestee could be searched incidental to their arrest. *See, e.g.*, *United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007); *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009); *Silvan W. v. Briggs*, 309 F. App'x 216, 225 (10th Cir. 2009) (unpublished); *see also United States v. Ortiz*, 84 F.3d 977, 984 (7th Cir. 1996) (applying a similar rationale to the search of a pager's electronic memory and noting the need to preserve evidence). Other courts came to the opposite conclusion, for example, by finding a search of a cellular phone did not advance either rationale for the search incident to arrest doctrine identified in *Chimel* or, referencing *Chadwick*, noting that the search was too remote in time from the arrest. *See, e.g.*, *United States v. Park*, 2007 WL 1521573 at * 8 (N.D. Cal. 2007) (finding neither rationale from *Chimel* applied); *United States v. Lasalle*, 2007 WL 1390820 at *7 (D. Haw. 2007) (concluding the search of the phone was not "roughly contemporaneous" with the arrest).

After the Court's *Gant* decision but prior to the date of Basham's plea hearing, several courts continued to uphold searches of cellular phones discovered on an arrestee's person. *See, e.g.*, *United States v. Hill*, 2011 WL 90130 at * 7 (N.D. Cal. 2011); *United States v. Gomez*, 807 F. Supp. 2d 1134, 1143-45 (S.D. Fla. 2011); *United States v. Rodriguez*, 2011 WL 3924958 at *5

foreclose the present inquiry.

(S.D. Tex. 2011), *aff'd* 702 F.3d 206 (5th Cir. 2012); *see also United States v. Pineda-Areola*, 372 F. App'x 661, 663 (7th Cir. 2010) (unpublished). During this same time period, some courts instead relied on *Gant* and found the search of a cellular phone impermissible because it was not reasonable to believe that evidence of the crime for which the defendant had been arrested could be located on the cellular phone. *United States v. McGhee*, 2009 WL 2424104 at *3 (D. Neb. 2009) (also finding the traditional rationales articulated in *Chimel* were not satisfied); *United States v. Quintana*, 594 F. Supp. 2d 1291, 1300-01 (M.D. Fla. 2009) (decided before *Gant* was handed down but noting that no evidence related to the crime the defendant had been arrested for could be located in the cellular phone).

While Basham contends that *Gant*'s articulation of the search incident to arrest doctrine supported his suppression argument and that there were several courts that relied on that decision to suppress warrantless cell phone searches, other courts had considered similar arguments and rejected them after relying on *Robinson*. *See, e.g.*, *Hill*, 2011 WL 90130 at *8 (concluding that because the phone was found on the defendant's person, the rationale of *Robinson* would allow officers to search the phone irrespective of *Gant*); *Gomez*, 807 F. Supp. 2d at 1143-44 (finding that *Gant* did not alter the principle that officers can search even "highly private articles" of personal property found on the arrestee, such as a cellular phone). Additionally, some courts had even relied on *Gant*'s rationale for permitting a vehicle search to conclude that officers could also search an arrestee's cellular phone if it was "reasonable to

19

believe evidence relevant to the crime of arrest" could be found on the phone. *See, e.g., Rodriguez*, 2011 WL 3924958 at *5 (quoting *Gant*, 556 U.S. at 343), *aff'd* 702 F.3d at 209-10 (agreeing that the search was permissible under *Gant*); *Quintana*, 594 F. Supp. 2d at 1299 (decided before *Gant* was handed down but noting that other courts had already found a reasonable probability that evidence pertaining to an arrestee's drug-related crimes could be found on his or her cellular phone). Moreover, some courts had found that one of the "twin rationales of *Chimel*," namely the need to preserve evidence, supported the warrantless search of a cellular phone. *See, e.g.*, *Murphy*, 552 F.3d at 411 (noting the "manifest need . . . to preserve evidence" rationale that the Fourth Circuit relied on in two earlier, unpublished decisions involving the retrieval of information from cellular phones and pagers searched incidentally to an arrest); *United States v. Salgado*, 2010 WL 3062440 at *3-4  (N.D. Ga. 2010) (allowing the search and finding that the data on the cellular phone "could have been altered, erased, or deleted remotely."), *adopted by* 2010 WL 3035755 (N.D. Ga. 2010). While this court need not address the soundness of those decisions, these cases demonstrate the judicial schism that persisted both before and after *Gant* regarding whether officers could search an arrestee's cellular phone incidental to their arrest.

In light of this split of authority, the Eighth Circuit's decision in *New v. United States*, 652 F.3d 949 (8th Cir. 2011) is instructive. Donovan New, a § 2255 petitioner, asserted that he received ineffective assistance of counsel because his attorney should have argued that an officer's entry into New's

20

hospital room was a "search" under the Fourth Amendment. *Id.* at 952. The Eighth Circuit explained that neither it nor the Supreme Court had addressed the issue and observed that other courts were split. *Id.* The court then stated that, "[a] failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The court also relied on its previous ruling in *Fields v. United States*, 201 F.3d 923 (8th Cir. 2000), where it held:

> Given this split of authority at the time Fields was tried, and the complete lack of Eighth Circuit or Supreme Court authority on the subject, it must be said that counsel's performance fell within the wide range of professionally competent assistance. . . . If counsel's failure to anticipate a change in the law will not establish that counsel performed below professional standards, *then counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts surely cannot render counsel's performance professionally unreasonable.*

*Id.* at 953 (quoting *Fields*, 201 F.3d at 1027-28) (emphasis in original) (alterations in original).

As in *New*, no controlling Eighth Circuit or Supreme Court decision was available at the time of Basham's plea that addressed the argument Basham now insists his attorney should have made. Additionally, the division in reasoning between the courts that had addressed the issue and the conclusions they ultimately reached was pronounced. Thus, as the Eighth Circuit stated, "[Basham] has not identified any controlling legal authority that directly supported his Fourth Amendment argument, or any controlling

21

authority that 'clearly portend[s]' that such an argument would have been successful." *Id.* at 953 (quoting *Fields*, 201 F.3d at 1028).

Although it was at least conceivable that Basham's original counsel could have pieced together an argument from those non-controlling cases which resolved the suppression issue as Basham now presents it, "[c]ounsel need not raise every single conceivable argument to defeat a claim of ineffective assistance of counsel." *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996); *see also Strickland*, 466 U.S. at 689 (explaining that the purpose of the Sixth Amendment "is not to improve the quality of legal representation, although that is a goal of considerable importance in the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.").[7] Further, the record from Basham's hearings shows that, among other things, counsel helped negotiate a plea agreement carrying a stipulated offense level lower than what Basham may have faced had he gone to trial, that counsel explained the benefits and consequences of pleading guilty in lieu of going to trial, and that counsel raised several objections to the PSR on Basham's behalf at sentencing that helped reduce his total offense level. Likewise, Basham stated under oath at his plea hearing that he was satisfied with counsel's performance. In light of

---

[7] Basham identified a number of cases decided after he pleaded guilty. Civ. Docket 17 at 11-13. Basham acknowledges that these cases were not available to counsel at the time, but he argues that they nonetheless demonstrate the strength of his position. Because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," the court need not consider them in its analysis. *Strickland*, 466 U.S. at 689; *see also Kellogg*, 741 F.2d at 1105.

all of the circumstances, Basham has not shown that counsel's performance was outside the "wide range of reasonable professional assistance" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688-89; *see also Kimmelman*, 477 U.S. at 386 (observing it is "generally appropriate for a reviewing court to assess counsel's overall performance" to determine whether the acts or omissions "overcome the presumption that [] counsel rendered reasonable professional assistance.").

### B.    Has Basham Demonstrated Prejudice?

Because Basham has not shown that counsel's performance was deficient, the court need not address the prejudice-prong of *Strickland*. *Bear Stops*, 339 F.3d at 780. But if counsel's performance was deficient by failing to file the suppression motion, the court would then have to assess whether there is a "reasonable probability that, but for counsel's errors, [Basham] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *see also Strickland*, 466 U.S. at 693 ("[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). Thus, a petitioner must provide "specific facts which would allow [the court] to make . . . an intelligent assessment of the likelihood that [the petitioner] would not have pleaded guilty." *Tran v. Lockhart*, 849 F.2d 1064, 1067 (8th Cir. 1988); *see also DeRoo*, 223 F.3d at 925 (citing *Hill*, 474 U.S. at 59) (explaining that

23

this inquiry "will depend largely on the likelihood of success if the alleged error were corrected.").

Basham was charged with possession with intent to distribute a controlled substance. Leading up to the offense, officers organized a controlled sale of roughly an ounce of methamphetamine, and Basham provided $1,800 to a confidential informant in order to purchase it. Officers surveilled the exchange between Basham and the informant while the two were inside the informant's vehicle. When Basham was arrested after exiting the vehicle, the drugs, a scale, and other items were found in his possession. At Basham's plea hearing, he acknowledged that as part of the government's case, it would have to prove that he not only possessed the drugs but also that he intended to distribute them. Basham's signed factual basis statement admitted that this was his purpose. Cr. Docket 26 at 1. Moreover, Basham stated under oath that his factual basis statement was the truth and that he wished to plead guilty to the offense as charged.

Basham has not identified the evidence that was allegedly obtained from his cellular phone that would have required suppression. *See United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007) ("When the issue is whether challenged evidence is the fruit of a Fourth Amendment violation, the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence."). Basham has also not explained how the suppression of that evidence would have reduced the strength of the government's case, which included the money Basham had paid

the informant, the officers' observations of the exchange, the drugs found on his person, and, potentially, the informant's testimony. [8] *Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir. 1994) (explaining that the § 2255 petitioner had not shown how suppression of a rifle would have reduced the strength of the case against him). Rather, Basham's position rests on his claim that he simply would have insisted on going to trial had counsel's performance not been deficient. *See* Civ. Docket 17 at 13-14. Basham contends that, because *pro se* pleadings are construed liberally in favor of the petitioner, the court's prejudice inquiry is satisfied. *Id.* at 14 (citations omitted). Basham's "bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that [he] would not have pled guilty and is far too speculative to warrant § 2255 relief." *United States v. Frausto*, 754 F.3d 640, 644 (8th Cir. 2014). Consequently, Basham has not made the kind of showing that would sufficiently "undermine the confidence" in the validity of his guilty plea.

The court finds that Basham has not shown that his trial counsel's performance was constitutionally deficient. Even if Basham had made such a showing, the court finds that Basham has not demonstrated that he was prejudiced by counsel's acts or omissions. In sum, Basham has not shown that he received ineffective assistance of counsel.

---

[8] According to the limited record before the court, the informant was also wearing a wire, which allowed the agents to overhear the conversations between Basham and the informant. PSR at 4.

### III.    Motion for Discovery

Accompanying his § 2255 motion, Basham also requested discovery. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6 of the Rules Governing § 2255 cases provides in part that,

> A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .
>
> A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

The court must first identify the "essential elements" of a petitioner's substantive claim and then evaluate whether "good cause" for discovery has been shown. *Bracy*, 520 U.S. at 904; 908-09; *see also Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004). A showing of "good cause" is established when " 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' " *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Once this showing is made, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.* at 909.

Basham has asked for "a full copy of [his] discovery including but not limited to any and all reports filed by city, county, state, and federal police or agencies involved with [his] arrest." Civ. Docket 3. Basham explains that he

was never given a copy of his discovery materials. *Id.* In what appears to be a supplement to his original motion for discovery, Basham adds that he is requesting these materials in order to further his § 2255 arguments and that, without them, the facts of his claims would not be true or correct. Civ. Docket 12.

The "essential elements" of Basham's ineffective assistance claim are that (1) counsel's performance was deficient, and (2) prejudice. Basham's request for discovery and the reasons for it are broadly stated and lack the specificity that would enable the court to determine if good cause has been shown. *See Smith v. United States*, 618 F.2d 507, 509 (1980) (observing that the petitioner "did not state what he hoped to find in these records or how they would help him prosecute his section 2255 motion."). At best, it appears this information might be relevant to the prejudice element, namely, evaluating the possible success of Basham's suppression motion and its effect on the outcome of his plea proceeding. *Cf. Hill*, 474 U.S. at 59. Nonetheless, Basham's requested materials do not go toward addressing the performance element because, given the lack of controlling precedent and split of authority among other courts at the time, counsel's determination that the motion would not be filed was not professionally unreasonable. Thus, the court does not find reason to believe that if the facts were more fully developed, Basham would be able to demonstrate that he is entitled to relief. *Bracy*, 520 U.S. at 908-09. Therefore, Basham's motion for discovery is denied.

27

## IV.   Evidentiary Hearing

A court must order an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the [petitioner] is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, a petition may be denied without a hearing if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

Basham contends that he discussed the possibility of filing a suppression motion with counsel but, according to Basham, counsel stated there were "no cases or case law to support [his] suppression issues." Civ. Docket 1 at 4. There is no dispute that the suppression motion was never filed. Accepting his allegations as true, however, Basham would not be entitled to relief because counsel's failure to raise an argument that required the resolution of an unsettled legal question did not amount to deficient performance. *See New*, 652 F.3d at 952. Assuming counsel's performance was deficient, however, Basham stated during his plea hearing that he wished to plead guilty to the charged offense, and that he was, in fact, guilty. This court observed Basham's demeanor and concluded his plea was entered knowingly and voluntarily. At no time prior to Basham's § 2255 petition did he indicate any reservation about entering the guilty plea. The only support for Basham's prejudice argument is his own statement that he would, in fact, not have

28

pleaded guilty in the absence of counsel's errors. Not only is Basham's statement contradicted by the change of plea record, but it is too conclusory to warrant an evidentiary hearing. *See Engelen*, 68 F.3d at 241 ("To command an evidentiary hearing, the movant must present some credible, non-conclusory evidence that he would [not] have pled guilty had he been properly advised.").

**V.     Certificate of Appealability**

Finally, when a district court denies a petitioner's § 2255 motion, he or she must first obtain a certificate of appealability before an appeal of that denial may be entertained. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(2). A "substantial showing" is one that demonstrates "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The court finds that Basham has made a substantial showing that his ineffective assistance claim is debatable among reasonable jurists, that another court could resolve the issues raised in that claim differently, and that a question raised by that claim deserves further proceedings. Consequently, a certificate of appealability will be issued.

## CONCLUSION

Basham has not demonstrated that he received ineffective assistance of counsel. The court finds that Basham has not shown good cause to warrant discovery, and that an evidentiary hearing would not be necessary. The court does, however, issue a certificate of appealability. Accordingly, it is

ORDERED that Basham's Motion to Vacate, Set Aside, or Correct his sentence is denied (Civ. Docket 1).

IT IS FURTHER ORDERED that Basham's motion for discovery (Civ. Docket 3) is denied.

IT IS FURTHER ORDERED that Basham's request for an evidentiary hearing is denied.

IT IS FURTHER ORDERED that a certificate of appealability will be issued on the following issue: Did Basham receive ineffective assistance of counsel when his attorney failed to move to suppress the search of his cell phone and its data?

Dated March 5, 2015.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE